Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000381
20-JUL-2018
07:46 AM

NO. CAAP-15-0000381

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee,
v.
STEPHEN L. PAULMIER, Defendant-Appellant


APPEAL FROM THE FAMILY COURT OF THE THIRD CIRCUIT
(FC-CR NO. 14-1-0101)


MEMORANDUM OPINION
(By: Ginoza, Chief Judge, Leonard and Reifurth, JJ.)

Plaintiff-Appellee State of Hawai'i (**State**) charged Defendant-Appellant Stephen L. Paulmier (**Paulmier**) by complaint with abuse of a family or household member. The complaining witness (**CW**) was Paulmier's wife.

Paulmier waived his right to a jury trial. The bench trial was held on four separate days -- August 27, 2014, November 26, 2014, February 25, 2015, and April 1, 2015 -- with breaks in between the trial days. Paulmier remained released on bail throughout the trial. On February 6, 2015, Paulmier filed a motion to dismiss the complaint for violation of his rights to due process and speedy trial (**Motion to Dismiss**). The Family Court of the Third Circuit (**Family Court**) heard the Motion to Dismiss on February 25, 2015, and denied it. On April, 1, 2015, at the conclusion of the trial, the Family Court found Paulmier guilty as charged. The Family Court sentenced Paulmier to two

years of probation, with a special condition of 30 days of imprisonment, with all but two days of imprisonment stayed. The Family Court entered its Amended Judgment on May 14, 2015.[1]

On appeal, Paulmier contends that: (1) the Family Court erred in denying his Motion to Dismiss because his right to speedy trial was violated; and (2) his waiver of his right to a jury trial was invalid because he was not informed "that a bench trial could be continued indefinitely." As explained below, we conclude that under the circumstances of this case, the length of time it took to complete Paulmier's trial did not violate his right to a speedy trial, and the Family Court did not err in denying Paulmier's Motion to Dismiss. We further conclude that Paulmier is not entitled to relief on his claim that his jury trial waiver was invalid. Accordingly, we affirm the Family Court's Judgment.

I. BACKGROUND

The CW is from Brazil. She came to Hawaiʻi in 2011, and she married Paulmier in May of 2012. About three weeks prior to the charged incident, the CW had asked Paulmier to move out of their duplex apartment and had changed the locks. However, about two days before the charged incident, she allowed Paulmier to return home.

According to the CW, on March 23, 2014, the day of the charged incident, the CW and Paulmier were at home. They had made plans to go out together, but began arguing after Paulmier said he would leave the house alone. The CW saw Paulmier doing something to the lock on the front door, which the CW had recently changed. The CW put her hand on the lock and asked Paulmier to stop. In response, Paulmier "very strongly" threw the CW to the floor. The CW fell over a bag of cans and bottles and felt extreme pain in her right shoulder. The CW got up and tried to leave the house through the front door, but Paulmier threw her down again, putting his hands around her chest area and

---

[1] The Honorable Lloyd Van De Car presided.

2

pushing forward. The CW fell down and hit her head on the tile floor with such force that she was concerned that she may have a skull fracture or possible hemorrhaging. Hitting her head was "very painful," and a bump immediately formed on her head.

The CW got up, tried to leave the house, and said she needed to call the police. Paulmier pushed the CW to the back of the kitchen and put his forearm against her neck. Paulmier grabbed his crotch, and with his face almost touching the CW's face, he said more than once, "You want my dick, you fucking bitch? You fuckin' bitch, you gonna call the cops. Call the cops, you fucking bitch." The CW screamed for help, and called out to her neighbor, Michael Thomas (**Thomas**). When Thomas arrived, Paulmier let the CW leave. The CW went to Thomas's house and called the police. The CW provided them with verbal and written statements. The police also took photographs of the CW, which were admitted in evidence at trial.

Thomas testified that he lived in the duplex unit that shared a wall with the CW and Paulmier's unit. On March 23, 2014, he heard a sound like a bookshelf had fallen and the CW scream, "Michael, Michael, help, help." Thomas called the police. He then went over to the CW's unit and found her screaming and crying with a big bump on her head. He described her facial features as "pain, fear, uh, tears." Thomas took the CW to his unit, while they waited for the police. The CW indicated to Thomas that she had sustained injuries to her head and shoulder. Thomas saw a bump on the CW's head and took pictures of it that day and "a couple days later, 'cause it had enlarged."

Officer Chere Rae Kalili (**Officer Kalili**) testified that she responded to a domestic violence call on March 23, 2014. Officer Kalili observed that the CW was "crying heavily . . . looked like she was scared[.] . . . was trembling." Officer Kalili felt a big lump and a depression on the CW's head. The CW also told Officer Kalili that the CW's right shoulder was

injured.  The CW provided a written statement and Officer Kalili took photographs of the CW.

Paulmier began his case-in-chief by calling Daniel Li (**Li**).  Li testified that he had been friends with both Paulmier and the CW.  He stated that he "heard some people say that . . . she's not very truthful."  Li testified that he would not take the things the CW said at face value and  "would probably have to verify" them.

Paulmier testified in his own defense.  Paulmier acknowledged that his relationship with the CW was "stormy" and that they "argued a lot."  However, he denied ever hitting her.

According to Paulmier, on the day of the incident, he told the CW he wanted a key to the new lock on the door.  Instead of providing Paulmier with the new key, the CW commented that since he had a key to the old lock, he could just put the old lock back on the door.  Paulmier called the CW's bluff and began putting the old lock back on the door.  Out of the corner of his eye, he saw the CW "lunge herself toward [him]."  The CW put her full body weight on Paulmier's forearms.  In response, Paulmier stood up, applied force to the CW, and lifted her up.  The CW then lost her balance and fell against some boxes and luggage against the wall in the kitchen.  Paulmier did not stop and check on the CW, but turned back to work on the lock.

Paulmier then felt the CW on his back with her full weight on him and her arms around his torso.  He stood up, flexed his arms to break her hold on him, and watched the CW fall to the ground.  The CW fell on her bottom, and her momentum continued and Paulmier heard the CW's head hit the tile of the kitchen floor.  The CW "popped right back up" and "got right in [Paulmier's] face[,]" yelling that he had injured her.  This made Paulmier very angry.  Paulmier backed her up to the refrigerator with his finger "wagging in her face" in a "scolding position[.]"  Paulmier again went back to fixing the lock.  Later, their neighbor Thomas knocked on the door, and Paulmier let Thomas in.

4

On cross-examination, the State asked Paulmier about several incidents of alleged violence against the CW. Paulmier maintained that he had never hit the CW.

After Paulmier rested, the State called the CW in rebuttal. The CW testified to several incidents in which Paulmier had engaged in acts of physical violence against her, which caused her pain. The State then rested.

After closing argument by both parties, the Family Court found Paulmier guilty as charged. In support of its decision, the Family Court made extensive findings on the record, including that the version of events described by the CW was credible, the version of events described by Paulmier lacked credibility, and the testimony of Thomas and Officer Kalili was consistent with the CW's description of events and inconsistent with Paulmier's description.

## II. DISCUSSION

### A. Right to Speedy Trial

Paulmier argues that the length of time between the date of the alleged offense and the disposition of the charges violated his constitutional right to a speedy trial, and therefore, the Family Court erred in denying his Motion to Dismiss. We disagree.

Paulmier was arrested for the alleged offense on March 23, 2014, and he was charged by complaint the next day, March 24, 2014. On May 7, 2014, Paulmier waived his right to a jury trial. The bench trial began on August 27, 2014. The bench trial was conducted on four separate trial days -- August 27, 2014, November 26, 2014, February 25, 2015, and April 1, 2015. At the end of a trial day, the trial was recessed and continued to the next date determined by the Family Court to be available to hold the trial. This practice continued until the trial was concluded on April 1, 2015, with the Family Court finding Paulmier guilty as charged. The time period from the beginning of trial to the end of the trial was approximately seven months.

The time period from Paulmier's arrest until the conclusion of trial was approximately twelve and a half months.

Paulmier acknowledges that his bench trial was commenced within 180 days of his arrest and thus complied with the speedy trial time requirement of Hawai'i Rules of Penal Procedure Rule 48 (2000). The thrust of his claim is that the seven-month time period it took to complete his four days of trial violated his constitutional right to a speedy trial.

In analyzing whether a defendant's constitutional right to a speedy trial has been violated, we apply the four-part test articulated in Barker v. Wingo, 407 U.S. 514 (1972). See State v. White, 92 Hawaii 192, 201, 990 P.2d 90, 99 (1999). "The four Barker factors are: (1) length of delay; (2) the reasons for the delay; (3) the defendant's assertion of his or her right to speedy trial; and (4) prejudice to the defendant." Id. at 201-202, 990 P.2d at 99-100 (citation omitted).

Conducting a four-day trial over a seven month time period is not the ideal or preferred practice. We acknowledge that conducting a relatively short evidentiary trial over a prolonged time period understandably raises concerns. However, under the circumstances of this case, we conclude that Paulmier's speedy trial rights were not violated.

Assuming *arguendo* that the length of the delay in this case was long enough to be presumptively prejudicial and trigger inquiry into the other Barker factors,[2] we conclude that evaluation of the remaining factors support the Family Court's denial of Paulmier's speedy trial claim. As to the second Barker factor, Paulmier does not assert that the delay was attributable to any intentional attempt by the State to hinder his defense. Rather, the reason for the delay cited by Paulmier and indicated

---

[2] Typically, a constitutional speedy trial claim focuses on pre-trial delay -- the delay between an arrest or charge and the commencement of trial. For purposes of pre-trial delay, the Hawai'i Supreme Court has held that a pre-trial delay of six months was presumptively prejudicial and sufficient to warrant in inquiry into the other Barker factors. State v. Lau, 78 Hawai'i 54, 62-63, 890 P.2d 291, 299-300 (1995).

by the record was "congestion of the Court's calendar." Court congestion is a neutral reason that does not weigh heavily against the State. Lau, 78 Hawai'i at 63, 890 P.2d at 300.

With respect to the third Barker factor, Paulmier did not object when the Family Court recessed the trial after the first trial day on August 27, 2014, and continued the trial until November 26, 2014. At the end of the second trial day on November 26, 2014, Paulmier's counsel asked, "No sooner, Your Honor?" when the Family Court proposed February 25, 2015 as the next trial date, but counsel did not object when the Family Court confirmed that date for the resumption of trial. The first time Paulmier raised a speedy trial claim was in his Motion to Dismiss, which was filed on February 6, 2015. Although Paulmier sought dismissal based on his speedy trial claim in his Motion to Dismiss, he did not make a demand for a speedy trial; that is, he did not request that the trial be resumed sooner than the scheduled February 25, 2015 date. Thus, Paulmier's Motion to Dismiss did not constitute an assertion of the right to a speedy trial for Barker purposes. See Lau, 78 Hawai'i at 63-64, 890 P.2d at 300-01. Moreover, even assuming arguendo that the Motion to Dismiss filed on February 6, 2014 qualified as an assertion of the right to a speedy trial for Barker purposes, the trial was completed two months later on April 1, 2015. The third Barker, factor therefore weighs in favor of the State.

The fourth Barker factor, prejudice to the defendant, should be assessed in light of the interests the speedy trial right was intended to address. Barker, 407 U.S. at 532. The Court has identified three such interests:

> (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

Id. (footnote omitted).

Here, the record indicates that Paulmier was released on bail after his arrest and remained on bail throughout his trial. Paulmier asserted that the delay in completing his trial was very stressful and caused him distress, and that people had disparaged his reputation in the community while the trial was ongoing. The Family Court found that the stress described by Paulmier was not unusual, and noted that Paulmier had not presented evidence that he was unable to participate in his defense. We conclude that the Family Court did not err in this assessment.

Paulmier's contention that the breaks in trial were prejudicial because it gave the prosecution the opportunity to "coach" the CW was speculative and unsubstantiated. He also failed to provide any specific argument on how or why the breaks in trial impaired his ability to effectively cross-examine the CW. Finally, the Family Court disagreed with Paulmier's claim that the breaks in trial unfairly "blunted" its ability to assess the credibility of witnesses. The Family Court explained that it keeps notes of the witnesses' testimony, has transcripts and tapes of the proceedings available to refresh its recollection, and would make use of these materials in rendering its decision. In addition, the Family Court's detailed findings in support of its guilty verdict reflect a clear recollection of the trial evidence. Under these circumstances, we conclude that the fourth Barker factor weighs in favor of the State.

Having considered the Barker factors, we conclude that Paulmier's constitutional right to a speedy trial was not violated and that the Family Court properly denied his Motion to Dismiss.[3]

---

[3] We note that in his Motion to Dismiss, Paulmier argued that the length of time it was taking to complete his trial violated his due process right to a fair trial as well as his right to a speedy trial. Paulmier does not make a separate due process argument on appeal. In any event, Paulmier's due process and speedy trial claims in his Motion to Dismiss were based on the same arguments. Our rejection of Paulmier's speedy trial claim therefore also disposes of the due process claim he raised in the Family Court.

B.    Waiver of Jury Trial

Paulmier contends that the waiver of his right to a jury trial was invalid because he was not informed "that a bench trial could be continued indefinitely."  This contention is without merit.

First, Paulmier did not challenge the validity of his jury trial waiver in the Family Court.  He did not seek to withdraw his jury trial waiver or argue that the waiver was invalid in the Family Court.  Accordingly, he did not preserve the issue for appeal.  See State v. Hoglund, 71 Haw. 147, 150, 785 P.2d 1311, 1313 (1990) ("Generally, the failure to properly raise an issue at the trial level precludes a party from raising that issue on appeal."); State v. Ildefonso, 72 Haw. 573, 584, 827 P.2d 648, 655 (1992) ("Our review of the record reveals that [the defendant] did not raise this argument at trial, and thus it is deemed to have been waived."); State v. Moses, 102 Hawai'i 449, 456, 77 P.3d 940, 947 (2003) ("As a general rule, if a party does not raise an argument at trial, that argument will be deemed to have been waived on appeal[.]").

In any event, we reject Paulmier's claim that his jury trial waiver was invalid.  Paulmier does not cite any case holding that for a jury trial waiver to be valid, the trial court must advise the defendant on how long the bench trial will take.  Indeed, it is not clear how a trial judge would know in advance the future contingencies that would affect how long the bench trial would take to complete.  Nor does Paulmier cite a case holding that for a jury trial waiver to be valid, the trial court must advise the defendant on how the time to complete a bench trial compares with that of a jury trial.  Hawai'i cases discussing jury trial waivers have not included advisement of the anticipated length of a bench trial or the comparison between the time to complete a bench trial and a jury trial as among the information that should or must be provided to a defendant for a jury trial waiver to be valid.  See State v. Gomez-Lobato, 130 Hawai'i 465, 470-73, 312 P.3d 897, 902-05 (2013).

9

III.   CONCLUSION

For the foregoing reasons, we affirm the Family Court's Amended Judgment.

DATED:   Honolulu, Hawaiʻi, July 20, 2018.


On the briefs:

Gary C. Zamber,
for Defendant-Appellant.

Sylvia Wong,
Deputy Prosecuting Attorney,
County of Hawaiʻi,
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge

10